[Civ. No. 1730. Second Appellate District.—November 20, 1915.]

## Mrs. P. T. ANDERSON, Respondent, v. WALTER A. LEWIS, Auditor of the County of Los Angeles, Appellant.

PROBATION OFFICERS—POWER OF APPOINTMENT—COUNTY CHARTER.— Where a county charter adopted pursuant to the amendment of 1911 to section 7½ of article XI of the constitution authorizes the board of supervisors of the county to make provision for the appointment of probation officers, and provision is so made, the general laws of the state are superseded.

ID.—ORDINANCE CREATING PROBATION OFFICES—SILENCE AS TO MANNER OF APPOINTMENT—GENERAL LAW APPLICABLE.—Where, however, the board of supervisors, in enacting an ordinance providing for probation offices and fixing the compensation of the officers, makes no mention of the manner in which the appointments shall be made, the general laws of the state govern the matter.

ID.—ASSISTANT PROBATION OFFICER—INVALID APPOINTMENT.—An assistant county probation officer appointed by the judge of the juvenile court instead of by the chief probation officer of the county is not a legally appointed officer, where such county had adopted a freeholders' charter and provided therein that its board of supervisors might make provision for the appointment of such officers, notwithstanding that such board, in enacting an ordinance providing for such officers, failed to make any mention of the manner of their appointment.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge.

The facts are stated in the opinion of the court.

A. J. Hill, County Counsel, and Roy V. Reppy, Assistant County Counsel, for Appellant.

Ford & Hammon, and Tyrrell, Abrahams & Brown, for Respondent.

JAMES, J.—Respondent herein petitioned the superior court to issue a writ of mandate compelling appellant, as the auditor of the county of Los Angeles, to issue to her a warrant on the county treasurer for the sum of one hundred dollars as salary to which she claimed to be entitled. It was alleged

that during the month of December, 1914, respondent occupied the position of assistant probation officer of the county of Los Angeles. The writ was issued and the auditor appealed.

It is urged that the judgment was unwarranted because of the insufficiency of the evidence as to several material matters embraced within the findings of the court. The trial judge, in brief, determined the facts to be that: Petitioner, on the twelfth day of December, 1913, was on the civil service list as an eligible for appointment as assistant probation officer, and that on or about said twelfth day of December, 1913, she was nominated and appointed to the position by the chief probation officer and assigned to duty, and that she entered upon her duties as such officer, and ever since that time, to and including the month of December, 1914, continued to so act under the direction of the chief probation officer; that the salary attached to the position had been duly fixed by ordinance of the board of supervisors of Los Angeles County at the sum of one hundred dollars per month; that petitioner had presented her demand to appellant auditor, which he had refused to comply with, and that there was sufficient funds in the treasury of the county of Los Angeles available to pay the claim. The facts as they were presented to the trial judge are set out in abstract in a bill of exceptions. It appears that Hugh C. Gibson, the probation officer, testified that on the twelfth day of December, 1913, there were vacancies in several of the positions designated as assistant probation officer, and that the petitioner was at that time nominated by the probation committee of the juvenile court as a candidate to fill one of such positions, and that thereafter she was "appointed to said vacant position by Fred H. Taft, judge of the juvenile court of said county." Further, that the appointment was made in writing, filed in the office of the county clerk, and that petitioner thereupon took the oath of office. This witness further testified that on the fifteenth day of December, 1913, he assigned petitioner to duty in her office and that she had since that time continued to act. Further, the bill of exceptions also contains this clause: "The witness testified further that on the twelfth day of December, 1913, he consented to and was willing that said Mrs. P. T. Anderson be appointed to the said position, and that he did not at any time discharge her." Gibson testified that he had recognized and considered petitioner as the duly qualified and appointed assistant pro-

bation officer of Los Angeles County during all the times material to the controversy. Three letters were introduced in evidence, the first of which was written to Gibson as chief probation officer by the county civil service commission, requesting Gibson to give the names of persons added to his department. This letter bore date the nineteenth day of December, 1913. The second letter was one written by Gibson in answer to the letter just referred to, wherein he (Gibson) stated the names of persons added to his department, which included the name of this petitioner as assistant probation officer. The third letter was written later by Gibson to the probation committee of the county, wherein again was given a list of all employees in the probation office, which list included the name of petitioner as assistant probation officer. An ordinance of the board of supervisors was introduced in evidence, which provided for officers in the probation department as follows: "Section 28. Probation officer, one hundred and fifty dollars per month; provided it shall be and there is hereby allowed to the probation officer the following assistants, clerks, deputies and employees, *who shall be appointed by the probation officer from the eligible civil service list,* and shall be paid as follows: . . . sixteen assistant probation officers at a salary of one hundred dollars per month." This ordinance was shown to have been adopted in June, prior to the date of the alleged appointment of petitioner. It will be noted that the evidence showed that the formal appointment of petitioner as assistant probation officer was attempted to be made by the judge of the superior court. This procedure, no doubt, was adopted because of the view held by the judge of the juvenile department, that under the state juvenile law the power to appoint the probation officers rested with him. In the case of *Gibson* v. *Civil Service Commission of County of Los Angeles,* 27 Cal. App. 396, [150 Pac. 78], this court decided that, under the provisions of the county charter, the board of supervisors was authorized to make provision for the appointment of these officers, and that where such appointment had been so provided for, the state law ceased to operate as to that matter.

Appellant's claim is that the petitioner herein was not shown to ever have been legally appointed, and that because of such fact she was not entitled to collect salary. It is admitted that at all times material to matters in issue she was at least a *de facto* officer. The acts of a person performing as-

sumed duties as an officer *de facto* ordinarily are regular and valid. However, it does not follow that such *de facto* officer may claim the compensation attached to the office for the performance of such duties. It is held that the collection of the salary or compensation is an incident to the title to the office, and not to its occupation and exercise. (*Burke* v. *Edgar,* 67 Cal. 182, [7 Pac. 488].) There is then squarely presented the question as to whether petitioner herein, during the time covered by her claim for compensation, was acting under a valid appointment. The amendment to the state constitution adopted in October, 1911, authorized for the first time the framing of freeholders' charters for counties. (Const., art. XI, sec. 7½.) By the terms of this amendment the several things which it is competent for such charters to provide for are set forth in a number of paragraphs. It is therein stated to be competent for charters to provide, and the phrase is used, "and the same shall provide," among other things: "5. For the fixing and regulation by boards of supervisors, by ordinance, of the appointment and number of assistants, deputies, clerks, attachés and other persons to be employed, from time to time, in the several offices of the county, and for the prescribing and regulating by such boards of the powers, duties, qualifications and compensation of such persons, the times at which, and terms for which they shall be appointed, *and the manner of their appointment and removal; . . . "* The italics have been indicated by us to give emphasis to the clause to be particularly considered in determining the question stated. The ordinance passed by the board of supervisors in June, 1913, which has been referred to and wherein the offices of probation officer and assistant probation officer were provided for, makes no mention of the manner in which said appointments shall be made. It is respondent's argument that, as the question of the "particular manner of the appointment" was left to the board of supervisors, in the absence of any action by ordinance taken to that end, no particular form of appointment was requisite and that such appointment might be made orally. This argument assumes also that because of the charter provisions and the constitutional permission authorizing the adoption of charters, the effect of all general laws touching the matter of the appointment of deputies or assistants is completely nullified. It is admitted that by section 4024, Political Code, appointments of deputies

are required to be in writing and filed with the county clerk. Our opinion is that, where the board of supervisors has failed or declined to exercise a right to legislate as to the manner of appointment of subordinate officers, the general laws of the state touching such matters should govern. The constitutional amendment referred to seems not to restrict the operation of general laws in that regard by any express terms or definite suggestion. There are other sections of the Political Code than the one cited which declare that appointments of deputies must be in writing, and that an oath of office must be taken by the persons appointed. We may refer to Political Code, sections 894 and 910. Section 910 particularly refers to the matter of the oath, and provides that deputies, clerks, and subordinate officers must, "within ten days after receiving notice of their appointment, take and file an oath in the manner required of their principals." The position of respondent that no written appointment was required to be made would have found some authority in precedent were there an entire absence of statutory law upon the subject. (*Bonds* v. *State,* 8 Tenn. 143, [17 Am. Dec. 795].) Respondent urges, nevertheless, as further ground for sustaining the regularity of petitioner's appointment, that the letters introduced in evidence expressed sufficient to show an appointment in writing made by the probation officer. The case of *People* v. *Fitzsimmons,* 68 N. Y. 514, is cited as an authority. In that case the mayor, who legally had the right to appoint certain excise commissioners, but thinking that he only had the right to recommend to a city council for confirmation such appointments, did transmit to the latter body in writing his recommendation containing the names of three persons whom he designated as nominees. It was held that such a writing constituted a sufficient appointment. It is well to note that in the opinion the court there says that the mayor "selected the men; he appointed them, and they were no less his appointments after confirmation by the common council." It was clear enough in that case that the persons who assumed office were persons actually selected and nominated in writing by the mayor. But the same court in a later decision, entitled *Babcock* v. *Murray,* 70 N. Y. 521, declared that the decision in the Fitzsimmons case (*supra*) had been made with "considerable hesitation and not without great doubts." As we understand the attitude of counsel, as impressed in the argument in

briefs, it is not contended that if section 4024 of the Political
Code is of effect as governing the manner of appointment of
assistant probation officers, the letters would be sufficient evi-
dence of compliance with the requisite formalities.   That sec-
tion provides as follows: ''Every county, township, or district
officer, except a supervisor or judicial officer, may appoint as
many deputies as may be necessary for the prompt and faith-
ful discharge of the duties of his office.   Such appointment
must be made in writing, and filed in the office of the county
clerk; and until such appointment is so made and filed, and
until such deputy shall have taken the oath of office, no one
shall be or act as such deputy.''   While it is not argued, we
have taken notice of the fact that the provisions of section
4024 might be construed as applicable only to deputies or
assistants appointed in excess of those specifically provided
for by law.   In that event the section would not apply to the
assistant probation officers.   For that reason we have called
attention to section 894 of the Political Code, which provides:
''The appointment of deputies, clerks, and subordinate officers,
when not otherwise provided for, must be made in writing,
filed in the office of the appointing power or the office of its
clerk.''   If we are to say that the last provision was the one
under which the appointment should have been made, then it
would have been the duty of the chief probation officer to make
a record of the appointment in his office in some substantial
form and for the person so appointed to take the oath of office.
The question is not raised, but, parenthetically, we may sug-
gest that nowhere in the findings of fact does it appear to
have been determined that the petitioner ever took an oath of
office.   That point, however, not having been suggested, rea-
son for this decision is not in any particular to be ascribed
to the lack of such finding.   The evidence, to our minds, in no
wise shows that Gibson, the probation officer, ever selected as
his appointee, directly or impliedly, this petitioner.   It ap-
pears expressly by the evidence that such selection was made
by the judge of the juvenile court who, as we have heretofore
determined, had no power to appoint.   By every reasonable
inference to be drawn from the testimony, it seems clear be-
yond any doubt whatsoever that the chief probation officer
assumed that the judge had the right to make the appoint-
ment, and accepted the appointment of the petitioner because
of that fact and that fact alone.   We attach no weight as

determinative of this matter to the statement contained in the evidence that the probation officer consented to and was willing that the petitioner be appointed to the position. He did not so appoint her, and the letters written by him were apparently merely by way of compliance with the regulations of the civil service commission, under the control of whom, as to the making of the reports of his office, he seemed to be.

Having reached the conclusion that the evidence was insufficient to justify the material finding made by the court that petitioner was regularly appointed to her position, we do not think it necessary to pass upon the question suggested in conclusion by the appellant. In the petitioner's complaint it did not appear that the auditor, before demand for the salary warrant was made upon him, had received a certificate from the civil service commission certifying to the correctness of the demand, as section 38 of the Los Angeles County charter provides. Appellant has contended that the auditor could not be compelled by mandate to act until such certificate had been furnished him. In answer to this proposition, respondent contends that the general duties of the auditor, as set forth in section 4091 of the Political Code, do not admit of this certificate being insisted upon as a prerequisite to the issuance of a warrant for a salary amount which is fixed by law. There is no doubt at all but that in defining the duties of the civil service commission it was competent for the charter to provide that such commission should furnish to the auditor evidence that the officers had performed their duties. As to whether, however, the presence of this certificate was a necessary prerequisite to the issuing of the warrant to an officer whose salary is fixed by law, we do not decide.

Under the conclusions expressed it must follow that the petitioner is not entitled to the relief.

The judgment is reversed.

Conrey, P. J., and Shaw, J., concurred.